IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FLIPSI, LTD., | ) |
| Plaintiff, | ) Case No. 23-cv-00745 |
| v. | ) Judge Matthew F. Kennelly |
| | ) Magistrate Judge Jeffrey T. Gilbert |
| TOMY INTERNATIONAL, INC., | ) |
| Defendant. | ) |

**DEFENDANT TOMY INTERNATIONAL, INC.'S LOCAL RULE 56.1
STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT
OF PARTIAL SUMMARY JUDGMENT**

Defendant, TOMY International, Inc., by its attorneys Joseph Kuo and Bethany Beaver of Saul Ewing LLP, submits the following statement of undisputed facts, pursuant to Federal Rule of Civil Procedure 56(b) and Local Rule 56.1, in support of its Motion for Partial Summary Judgment.

**I.   DEVELOPMENT OF THE FLIPSI BABY BOTTLE**

1. In 2013, brothers Chris and Jeffrey Plott "began to experiment on the development of a bottle that was both functional and easy to clean." (Exhibit A: Flipsi's First Supplemental Objections and Responses to TOMY's First Set of Interrogatories, Interrogatory No. 2).

2. During, this process, "Flipsi observed, interviewed, and demonstrated protypes to over 160 potential end users." (Exhibit B: Flipsi's 30(b)(6) Jeffrey Plott Deposition: 100:10-16); (*See also* Exhibit C: Ex. 12 to Jeffrey Plott Deposition (F0000450-F0000460) at F0000457); (Exhibit E: Ex. 10 to Jeffrey Plott Deposition (F0000437-439) at F0000438).

3. While not all the 160 potential end users were demonstrated the prototype of the Flipsi invention "this prototype or, you know, a version of this prototype would have been shown to, you know, potential end users." (Ex. B: 94:23-25).

1

4. The "160 potential end users" included "friends and family." (Ex. B: 93:15-16).

5. As confirmed by Jeffrey Plott, "160 potential end user[]" "friends and family" were not bound by any confidentiality agreements. (Ex. B: 134:4-16; 93:4-6).

6. The Plott co-inventors participated in various competitions as early as 2013 to help "sort of hone their business ideas and provide them feedback." (Ex. B: 20:12-21:2; 21:19-22).

*2014 ASME IShow Competition*

7. In the spring of 2014, Flipsi applied to participate in the 2014 ASME IShow Competition and submitted a "2014 ASME IShow Competition Application." (Ex. B: 91:10-19); (Ex. E: (F0000437-439)).

8. The 2014 ASME competition was held on April 28, 2014. (Exhibit F: Ex. 11 to Jeffrey Plott Deposition).

9. In the ASME application, Flipsi submitted a picture of the Flipsi baby bottle "in an exploded view." (Ex. B: 92:1-3).

10. The picture of the Flipsi baby bottle shows a "silicone base:" (Ex. E: F0000439).



**Figure 2:** Flipsi Bottle Design

11. In the eyes of an ordinary observer, the silicone base is substantially the same as the claimed design in this matter. (Exhibit G: Attachment 1: ¶¶ 39-41, 48).



(Ex. G: Attachment 1: ¶¶ 39-41).

12. Flipsi submitted its application and the ASME IShow judges did not accept Flipsi's application to participate. (Ex. B: 92:10-19).

13. There is no evidence that the judges of 2014 ASME IShow Competition were bound by any type of confidentiality or non-disclosure agreement. (Ex. G: Attachment 1: ¶ 44).

*2014 Dare to Dream Competition*

14. In 2013 or early 2014, Flipsi's co-inventors prepared the "D2D Phase III Application." (Ex. B: 96:6-10).

15. The D2D Phase III Application contained pictures of the Flipsi baby bottle. (Ex. B: 97:19-98:1).

16. The pictures, which are reproduced below, disclosed the "silicone base" of the Flipsi baby bottle. (Ex. C: F0000451; *See also* Ex. B: 97:19-98:17).




**Figure 2b:** Flipsi*baby* baby bottle

**Figure 1:** Flipsi Design

17. The silicone base is substantially the same as the claimed design in this matter. (Ex. G: Attachment 1: ¶¶ 39-41, 48).



(Ex. G: Attachment 1: ¶¶ 39-41).

18. Flipsi submitted the D2D Phase III Application in either late 2013 or early 2014 and the competition was prior to March 24, 2014. (Ex. B: 96:17-22; 103:5-8).

19. Flipsi was ultimately selected as a contestant for the competition and judges received the application for evaluation. (Ex. B: 98:18-21).

20. Flipsi was successful at the competition and won funding. (Ex. B: 99:7-13).

21. There is no evidence that any of the judges of the 2014 Dare to Dream Competition were subject to any type of confidentiality or non-disclosure agreement. (Ex. G: Attachment 1: ¶ 38).

*2014 ABC Kids Expo*

22. Flipsi displayed its product at an industry trade show in the 2014 ABC Kids Expo in the fall of 2014 (Ex. B: 80:2-3).

23. The ABC Kids Expo is "a trade show focused on baby products." (Ex. B: 85:2-3).

24. Flipsi purchased a booth for the ABC Kids Expo and "wanted to produce documents for people visiting our booth to, you know, sort of take with them." (Ex. B: 80:7-15).

25. Flipsi displayed "prototype bottles to the ABC Expo." (Ex. B: 85:6-8).

26. Flipsi submitted an ABC Kids Expo Application to participate in the ABC Kids Expo. (Ex. B: 80:18-22).

27. The application included a "Flipsi Bottle Overview" (Exhibit H: Ex. 9 to Jeffrey Plott Deposition (F0000382-F0000385) at F0000383).

28. In the application for the ABC Kids Expo, Flipsi disclosed the "Flipsi Design Elements" including its container insert as the "Silicone Base" shown below. (Ex. H: F0000384).



(Ex. H: F0000384).

29. The silicone base is substantially the same as the claimed design in this matter. (Ex. G: Attachment 1: ¶¶ 39-41).

30. Flipsi admitted "that patent that's at issue in this litigation would cover the silicone base shown." (Ex. B: 88:3-5; 87:2-8).

31. Flipsi disclosed the container design in the ABC Kids Expo application before the ABC Expo Show by way of photographs and renderings. (Ex. B: 80:7-11, 16-18); (Ex. H: F0000383-F0000385).

32. There is no evidence of any participant in the 2014 ABC Kids Expo being bound by any type of confidentiality or non-disclosure agreement. (Ex. G: Attachment 1: ¶ 38).

*FLIPSI FILES PATENT FOR SILICONE INSERT TO ITS BABY BOTTLE*

33. Flipsi's Design patent application 29/538,499 matured into United States Design Patent No. D890,574 (the "'574 patent") on September 3, 2015. (Exhibit I: 'United States Design Patent No. D890,574 (F0001362-F0001370)); (Ex. A: Interrogatory Response No. 5).

34. The '574 Patent contains a single design for a "beverage container insert" (Ex. I).

35. The '574 Patent design depicts in solid lines a beverage container insert having specific proportions where the top lip width relative to the container's height is approximately 2 to 3, *i.e.*, the top lip is 2/3 as wide as the container is high. (Ex. I).

7

## II. EXPERT OPINIONS ON ORDINARY OBSERVER TEST FOR 4 OZ. POUCH

36. Flipsi's expert Paul Hatch identified no opinion is his Rule 26(a)(2) disclosure regarding whether an ordinary observer would consider the design of the 4 Oz. pouch to be substantially the same as the claimed design. (Ex. G: Attachment 1: ¶ 59).

37. Hatch admitted he made no such opinions regarding whether an ordinary observer would consider the design of the 4 Oz. pouch to be substantially the same as the claimed design. (Exhibit J: May 29, 2024 Deposition of Paul Hatch: 132:1-14; 154:12-19).

38. Hatch admitted he had no opinion "that the overall appearance of the 4-ounce product is substantially the same as the design in the 574 patent…." (Ex. J: 154:12-19).

39. Instead, Hatch admitted his infringement opinions were limited to the "8-ounce product." (Ex. J: 132:1-7).

40. Expert Kemnitzer opined that an ordinary observer would not consider the design of the 4 Oz. pouch to be substantially the same as the claimed design after comparing the 4 Oz. pouch with the claimed design as depicted below. (Ex. G: Attachment 2: ¶ 63-65).



(Ex. G: Attachment 2: ¶ 63).

41.     Kemnitzer found the following: The "only visual similarity between the Accused 4 Oz. pouch and the '574 Patent is the similar thick outwardly extending flange from the top edge." (Ex. G: Attachment 2: ¶ 64).

42.     The relative proportion of the height and width of the 4 Oz. Pouch is completely different from the relative proportion of the height and width of the claimed design. (Ex. G: Attachment 2: ¶ 64 ("Other than that similarity, there is no similarity in proportion with the accused 4 Oz. pouch being much shorter than the '574 Patent."); *See also* Exhibit K: Flipsi Supp. Response to Request to Admit, No. 10 and 11 (Admitting "the 4 Oz. Accused Product the width "W" is greater than the height "H")).

43.     The sidewalls of the 4 Oz. pouch are indisputably different from the claimed design. (Ex. G: Attachment 2: ¶ 64).

44. During prosecution of the '574 Patent, the patent examiner identified a specific curvature for the sidewalls as a basis for allowance. (Ex. G: Attachment 2: ¶ 12).



*Examiner's Statement of Reasons for Allowance*

None of the prior art has identical sidewall angle as the claimed design. Most of the art found has straight sidewalls that only tapered around the lower portion of the container, but the sidewalls of the claimed design tapered inwardly started from the upper 1/3 of the container, and curve inwardly dramatically close to the base. The thick flanged rim is also not found during the search, which combined with the slop of the sidewalls made the claimed design allowable.

(Ex. G: Attachment 2: ¶ 12).

45. This point of distinction between the prior art and Flipsi's design – straight sidewalls that only tapered around the lower portion of the container (prior art) versus sidewalls tapering inwardly starting from the upper 1/3 of the container and curving inwardly dramatically close to the base (claimed design) – is the same distinction between the 4 Oz. Pouch sidewalls and the claimed design. (Ex. G: Attachment 2: ¶ 64).

46. Last, the surface of the 4 Oz. Pouch is not uniform, and instead includes a series of visible horizontal lines. (*See* Exhibit K: Nos. #3 and #6).

### III. HARRINGTON'S IMPROPER OPINIONS REGARDING ARTICLE OF MANUFACTURE

47. Flipsi's damages expert, James Harrington ("Harrington"), offers opinion on patent damages based on both the entire bottle assembly including the 8 Oz. Pouch and the bottle

assembly including the 4 Oz. Pouch. (Exhibit M: April 2, 2024 Expert Report on Damages of James Harrington: ¶ 37).

48. Reference to a bottle assembly relates to TOMY's bottle assembly including a nipple, collar, frame and pouch. The accused pouches are included as part of the bottle assembly, but also separate from the bottle assembly. (Ex. M: ¶¶ 35-36).

49. In his report, Harrington conducts a four factor analysis to determine the "article of manufacture" and concludes "the revenues on all Nursh bottle components and liners are properly included in the disgorgement of profit analysis." (Ex. M: ¶¶ 29-37).

50. This four factor analysis involves: (1) the scope of the claimed design; (2) the relative prominence of the design within the product as a whole; (3) whether the design is conceptually distinct from the product as a whole; and (4) the physical relationship between the patented design and the rest of the product. (Ex. M: ¶ 29).

51. Harrington has no expertise in product design or design patents. (Ex. M: Attachment A).

52. Harrington has no expertise in consumer perceptions regarding prominence of a design of a component within an overall product. (Ex. M: Attachment A).

53. Harrington purports only to be an expert in "damages, financial, and accounting matters." (Ex. M: ¶ 1).

54. When asked about his experience in conducting article of manufacture analysis, Harrington stated he had never done such an analysis before. (Ex. N: May 31, 2024 Deposition of James Harrington: 16:17-17:19).

55. Further, when questioned about what qualified him to offer opinions related to the four factor analysis for article of manufacture, Harrington could not point to any specialized

knowledge by him, and resorted to saying he was not really giving an opinion, but was just making "observations." (Ex. N: 18:14-18:20; 26:3-26:7).

56. Harrington never provided any opinions regarding damages for just TOMY's pouch. (Ex. M; Exhibit O: May 29, 2024 Supplemental Expert Report on Damages of James Harrington).

57. Hatch opined that the 4 Oz. container would deceive the ordinary observer because "Having concluded that the Ordinary Observer would be deceived into thinking that the source of the Accused Product is that of the Claimed Design, it thus follows that the 4 Oz. Container's clear association with the Accused Product would mean it too deceives the Ordinary Observer as to its source." (Exhibit P: Infringement Expert Report of Paul Hatch in Support of Plaintiff Flipsi, Ltd.: ¶ 85).

58. However, Hatch did not even consider the 4 Oz. Pouch an "Accused Product" and never concluded the 4 Oz. pouch infringes the '574 patent. (Ex. P: ¶ 36).

59. Further, Hatch's opinion agreeing with Harrington's opinion was submitted after the April 2, 2024 deadline to submit Rule 26(a)(2) disclosures for the party bearing the burden of proof. (Ex. J: 11:12-13:10); (ECF No. 64).

60. The correct article of manufacture, in contrast, is the container insert. (Ex. G: Attachment 3: ¶ 10).

## IV. HARRINGTON'S UNSUPPORTED AND IMPROPER CALCULATION OF DAMAGES

61. Harrington's expert report regarding damages calculation is based on a single highest instance of Flipsi sales, which he then applied for all subsequent time periods. (Ex. M: ¶ 49; Ex. N: 44:13-23).

62. Harrington disregarded the Flipsi historic sales. (Ex. M: ¶ 49; Ex. N: 44:13-23).

63. Harrington did not determine average sales prior to TOMY entering the market (Ex. N: 48:9-23; 49:2-4).

64. Harrington also elected to disregard any growth rate prior to TOMY's entry into the market. (Ex. N: 47:19-49:8).

65. Harrington conducted this analysis based on a single highest instance of Flipsi sales despite having the data to complete more inclusive analysis. (Ex. N: 38:7-39:2).

Dated: July 25, 2024

Respectfully submitted,

By   /s/ Joseph M. Kuo
Joseph M. Kuo (IL Bar No. 6216400)
Bethany Beaver (IL Bar No. 6335548)
SAUL EWING, LLP
161 N. Clark Street, Suite 4200
Chicago, Illinois 60601
(312) 876-7151
joseph.kuo@saul.com
bethany.beaver@saul.com
*Attorneys for Defendant*
*TOMY International, Inc*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 25, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

<u>/s/ Joseph M. Kuo</u>