**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **FLIPSI, LTD.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 23 C 745** |
| | ) | |
| **TOMY INTERNATIONAL, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Flipsi, Ltd. sued defendant TOMY International, Inc. for infringement of a design patent and breach of contract. TOMY has filed a partial motion for summary judgment against both claims, arguing that: (a) Flipsi cannot show TOMY's four-ounce insert infringes on Flipsi's design patent, (b) Flipsi's design patent is invalid for anticipation, (c) Flipsi has not shown design patent damages, and (d) Flipsi has not shown breach of contract damages. TOMY has also moved to exclude the opinions of Flipsi's damages expert, James Harrington, on lost profits damages and breach of contract damages. In response, Flipsi has moved to exclude the opinion of TOMY's expert, Ronald Kemnitzer, on the defense of anticipation. For the reasons below, the Court: concludes that TOMY's four-ounce insert does not infringe and that Flipsi has failed to show patent damages, but declines to enter summary judgment in TOMY's favor on its contentions that Flipsi's design patent is invalid for anticipation and that Flipsi has failed to show breach of contract damages. The Court further excludes Harrington's design patent damages opinion but declines to exclude his breach of contract damages opinion.

Finally, the Court denies Flipsi's motion to exclude Kemnitzer's anticipation opinion.

## Background

The following facts are undisputed unless otherwise noted.  Flipsi designs and sells reusable baby bottles, including bottle inserts.  On May 28, 2019, Flipsi filed a design patent application for a beverage container insert.  The application claimed priority to U.S. Design Patent No. D779,882, which had been filed on September 3, 2015.  The United States Patent and Trademark Office approved the application, issuing U.S. Patent No. D890,574 to Flipsi on July 21, 2020.

While developing the patent, Flipsi applied to participate in several competitions and trade shows.  First, around early 2014, Flipsi applied for the Dare to Dream competition.  Its application included the design for a silicone baby bottle insert.  Flipsi was selected as a contestant for the competition and eventually won funding.

Second, in the spring of 2014, Flipsi applied to participate in the ASME IShow Competition.  Again, Flipsi's application included the design for a silicone baby bottle insert.  However, this time Flipsi was not selected to compete.

Lastly, Flipsi participated in the 2014 ABC Kids Expo, held from September 7–10 of that year.  As part of this Expo, Flipsi disclosed baby bottle design elements that included a design for a silicone baby bottle insert.

Apart from these competitions and trade shows, Flipsi also showed baby bottle insert prototypes to 160 potential end users.  Flipsi co-founder Jeffrey Plott asserts, but TOMY disputes, that these disclosures were predominantly made to close friends and family.

In October 2016, TOMY contacted Flipsi about a potential collaboration to

produce baby bottles.  Shortly thereafter, Flipsi and TOMY signed a mutual confidentiality agreement that barred TOMY from using and disclosing confidential information obtained during the parties' discussions.  The parties' communications ended in March 2017, however, when TOMY notified Flipsi that it no longer wished to collaborate.

Around late 2017, TOMY began selling its own line of baby bottles in four- and eight-ounce sizes.  These bottles included corresponding four- and eight-ounce bottle inserts.

Flipsi learned of TOMY's line of baby bottles in March 2018.  Beginning in September 2020, Flipsi sent TOMY notices claiming that its inserts infringed on Flipsi's patent.  TOMY did not respond to these notices.

Flipsi filed the present suit against TOMY on February 7, 2023.  It then amended its complaint.  The Court partially dismissed the amended complaint without prejudice, leading Flipsi to file a second amended complaint.  The Court denied TOMY's motion to dismiss the second amended complaint.  This operative complaint includes claims against TOMY for design patent infringement and breach of contract.

Discovery is now complete, and TOMY has moved for partial summary judgment on both of Flipsi's claims.  As part of its motion, TOMY also moves to exclude certain opinions of Flipsi's damages expert, James Harrington, concerning lost profits and breach of contract damages.  In its response to TOMY's summary judgment motion, Flipsi moves to exclude the anticipation opinion of TOMY's design expert, Ronald Kemnitzer.

## Discussion

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden is on the moving party to demonstrate no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court cannot "make credibility determinations" or "weigh the evidence." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Still, to avoid summary judgment, the nonmoving party must identify "specific facts showing that there is a genuine issue for trial" that go beyond a "mere scintilla of evidence." *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018).

## A.     Patent infringement

TOMY argues that no reasonable jury could find its four-ounce bottle insert infringed on Flipsi's patent. The patent holder must prove design patent infringement by a preponderance of the evidence. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015). "Determining whether a design patent has been infringed is a two-part test:  (1) the court first construes the claim to determine its meaning and scope; (2) the fact finder then compares the properly construed claim to the accused design." *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1341 (Fed. Cir. 2020). The "ordinary observer" test is used to compare the patented and accused

design.  *Id.*  Infringement is found "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, . . . inducing [a consumer] to purchase one supposing it to be the other."  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (en banc) (quoting *Gorham Co. v. White*, 81 U.S. 511, 528 (1871)).  Because the focus is on the ordinary observer, differences "must be evaluated in the context of the claimed design as a whole," as opposed to evaluating "separate elements in isolation."  *Id.*; *Think Green Ltd. v. Medela AG*, No. 21 C 5445, 2022 WL 6123348, at *4 (N.D. Ill. Oct. 7, 2022) (quoting *Hutzler Mfg. Co. v. Bradshaw Int', Inc.*, No. 11 C 7211, 2012 WL 3031150, at *10 (S.D.N.Y. July 25, 2012)) ("In determining whether two designs are 'substantially the same,' courts focus on the 'overall impression given by the claimed design, rather than particular ornamental details or minutiae.'").

In evaluating the claimed design, the fact finder must also consider the "prior art"—the knowledge that was available at the time of the patent to a person of ordinary skill in the art.  *Egyptian Goddess*, 543 F.3d at 676 ("[T]he ordinary observer is deemed to view the differences between the patented design and the accused product in the context of the prior art."); *Wimo Labs LLC v. Polyconcept N.A., Inc.*, 358 F. Supp. 3d 761, 764 n.6 (N.D. Ill. 2019) (citing *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1453–54 (Fed. Cir. 1984)).  When prior art is considered, an ordinary observer will focus on the "aspects of the claimed design that differ from the prior art."  *Egyptian Goddess*, 543 F.3d at 676.  This is especially true "when the claimed design is close to the prior art designs."  *Id.*  Similarity between the patent and prior art makes even "small differences" between the patent and accused design "important" to the

ordinary observer. *Id.*

The Court previously construed the patent as follows:

[A] beverage container insert which incorporate[s] the ornamental design shown in the drawings in solid lines. . . . [D]rawings shown using broken lines are not part of the claimed design. The contour lines shown on the surface of the beverage insert container . . . represent contour only.

Minute Entry of Jan. 11, 2024, Dkt. No. 64.

With this construction, Flipsi's patent depicts a design for a cup that has a height-to-width ratio of about three-to-two, a lip at the top, a blank / solid surface, and sidewalls that start straight but start to gradually taper about one-third of the way down, until dramatically closing at the base of the cup. In other words, a somewhat tall cup that slightly tapers at the sides into a rounded bottom.

TOMY argues that three aspects of its four-ounce insert create an overall impression distinct from Flipsi's patented design. First, the sidewalls on TOMY's insert go straight down until curving at the very bottom, as opposed to the gradual taper in the patented design. Second, the striping on TOMY's insert differs from the patented design, which has no striping or other features on the insert. Third, the height-to-width ratio of one-to-one on the TOMY insert makes it a short and squat form, as contrasted with the patent's three-to-two ratio.

When considering these elements together, no reasonable jury could find TOMY's four-ounce insert infringes Flipsi's patent. The differing, smaller proportions create a unique impression that would immediately alert an ordinary observer that TOMY's insert is distinct from the patent. Even the most hurried online consumer can tell the difference between a tall glass and a short, stocky one—people in search of highball glasses, which are tall, are not confused into buying old fashioned glasses,

6

which are short.  This, along with the differing sidewall tapering and striping, ensure that no ordinary observer would confuse TOMY's four-ounce insert with Flipsi's patent.

Flipsi's arguments otherwise are unavailing.  Flipsi first contends that slight differences in size and proportion cannot avoid infringement.  To support this proposition, it cites *Kao v. Snow Monster Inc.*, No. CV 17-08934-RSWL-GJSx, 2019 WL 2164192 (C.D. Cal. May 16, 2019).  *Kao* involved a design patent for a lightbulb-shaped cup.  *Id.* at *1.  The accused cup design retained the lightbulb shape but made the cup smaller and changed the proportions by elongating the neck.  *Id.* at *3.  The district court found that, "[g]iven the uniqueness of the shape," a reasonable jury could find the accused design infringed on the patent.  *Id.*  The court emphasized that because the accused design still "'embodie[d]' a classic lightbulb" or "any colorable imitation thereof," a reasonable juror could find infringement.  *Id.* at *4.

Flipsi did not patent a uniquely recognizable cup design, like a lightbulb.  The patented design, even if novel, does not evoke any object other than a tall cup.  By changing the proportions to be short and stocky, TOMY's four-ounce insert evokes a different, smaller cup.  Flipsi cannot claim TOMY infringed its patent simply because TOMY's four-ounce insert still "embodies" or is a "colorable imitation" of a cup—that would impermissibly expand Flipsi's narrow design patent to cover materially different cup designs.  *See In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988) ("Design patents have almost no scope.").  The insert's differing proportions promote a distinct overall impression from Flipsi's patent.

Next, Flipsi argues TOMY's insert has tapered walls like its patented design, not straight walls.  The Court, with the accused designs in front of it, is confident the walls of

the four-ounce insert are in fact straight. If there is any taper before the bottom, it is imperceptible to the naked eye, and it certainly would not be noticeable by the ordinary observer. Although Flipsi argues this fact is in dispute, it cannot manufacture a "genuine" dispute of fact by contradicting reality. *Cf. Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). No reasonable jury could find that the walls of the accused design are not straight.

Flipsi responds that even if the four-ounce insert has straight walls, the variance is too slight to change the overall impression of the design. This may be true in a vacuum. But the hypothetical ordinary observer is expected to understand the relevant prior art, so much so that even "small differences" become "important." *See Egyptian Goddess*, 543 F.3d at 676. When Flipsi's patent was granted, the patent examiner emphasized that what made Flipsi's design different from prior art was the sidewall tapering: "None of the prior art has identical sidewall angle as the claimed design. . . . [T]he claimed design tapered inwardly start[ing] from the upper 1/3 of the container, and curve inwardly dramatically close to the base." Def. TOMY Int'l, Inc.'s Local Rule 56.1 Stmt. of Undisputed Material Facts in Supp. of Partial Summ. J. ¶ 44. An ordinary observer, understanding that most cups do not have the patent's unique sidewall tapering, would find the four-ounce insert's straight sidewalls contribute to a distinct overall impression.

Finally, Flipsi argues the striping of TOMY's insert is an immaterial difference

because the patent should be construed to include all possible wall patterns. Flipsi is correct that "when a patent fails to specify a limitation," it is "entitled to the broadest reasonable construction." *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2012 WL 3071477, at *5 (N.D. Cal. July 27, 2012) (citing *In re Am. Acad. of Sci. Tech Ctr.*, 367 F.3d 1359, 1363 (Fed. Cir. 2004)). The depiction of a blank surface, for example, reasonably can be construed to claim a "transparent, translucent, or opaque surface." *Think Green*, 2022 WL 6123348, at *3 (citing *Transmatic, Inc. v. Gulton Indus., Inc.*, 601 F.2d 904, 912 (6th Cir. 1979)). Yet it is unreasonable to construe a blank surface to claim a patterned surface. A pattern is inherently not blank, and Flipsi cites no cases that have found a blank surface in a patent to claim alternate patterns. Because Flipsi did not patent a striped pattern, the insert's stripes are another distinguishing feature an ordinary observer would notice. *See Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*, 836 F. App'x 895, 898 (Fed. Cir. 2020) (concluding an accused design with rhinestone surfaces everywhere but the bottom was "plainly dissimilar" from a patent that included rhinestones on its bottom surface).

To be clear, the Court is not concluding that any one of these elements, in isolation, prevents a finding of infringement. A reasonable jury might conclude that a design that changed only one of the above elements infringes on Flipsi's patent. Yet the combination of the four-ounce insert's smaller proportions, straight sidewalls, and striped pattern create a distinct overall impression from the patent. No reasonable jury could find that an ordinary observer, aware of the prior art, would view TOMY's four-ounce insert as substantially similar to Flipsi's patented design. The Court grants TOMY's motion for summary judgment against patent infringement on the four-ounce

insert.

## B.    Anticipation

TOMY also argues that Flipsi's patent is invalid for anticipation.  "Design patents are presumed valid."  *Spigen Kor. Co. v. Ultraproof, Inc.*, 955 F.3d 1379, 1383 (Fed. Cir. 2020).  To invalidate a patent at summary judgment, the moving party must provide "clear and convincing evidence of facts underlying invalidity that no reasonable jury could find otherwise."  *Id.*

A patent is invalid for anticipation "if the claimed invention was . . . in public use . . . or otherwise available to the public before the effective filing date."  35 U.S.C. § 102(a)(1).  Public disclosures by the inventor, however, do not invalidate a patent if they were made during the statutory grace period:  "1 year or less before the effective filing date."  *Id.* § 102(b)(1).

Nor are all disclosures "public."  In deciding whether a disclosure counts as "public use," one considers the "totality of circumstances."  *Bernhardt, LLC v. Collezione Europa USA, Inc.*, 386 F.3d 1371, 1381 (Fed. Cir. 2004).  The "absence of a confidentiality agreement" is "not dispositive" of public use but instead is "one factor to be considered in assessing all the evidence."  *Id.*

Flipsi's patent claims a priority date of September 3, 2015.  Therefore, any public disclosures made more than a year before that date (i.e., before September 3, 2014) would invalidate the patent for anticipation.

### 1.    Public disclosures

TOMY contends that Flipsi's disclosures of a prototype bottle at competitions, tradeshows, and to potential end users all before September 3, 2014, invalidate its

patent.  First, TOMY cites Flipsi's entries into the 2014 Dare to Dream and ASME IShow competitions, in which Flipsi disclosed renderings of a prototype bottle in its applications.  In response, Flipsi provides an affidavit from its co-founder, Jeffrey Plott, who stated the competitions were "internal" student competitions and that he "fully understood and expected that the materials submitted to these competitions were to be kept confidential."  Decl. of Jeffrey Plott ¶¶ 8–9.  Although TOMY emphasizes that there is no evidence of confidentiality or nondisclosure agreements related to these competitions, the absence of confidentiality agreements is not dispositive.  *See Bernhardt*, 386 F.3d at 1381.  A norm of confidentiality can be enough.  *See, e.g., Cordis Corp. Bos. Sci. Corp.*, 561 F.3d 1319, 1334 (Fed. Cir. 2009) (affirming a district court's grant of summary judgment that a patent was not anticipated when there was evidence of "academic norms" that "gave rise to an expectation that disclosures will remain confidential").  Plott's testimony that he understood these applications to be confidential creates a genuine factual dispute regarding whether these disclosures were public.

Second, TOMY notes Flipsi's public participation in the 2014 ABC Kids Expo. Unlike the above competitions, there is little evidence that the Expo was confidential. Although Flipsi argues that its participation in the Expo was governed by a nondisclosure agreement, its failure to both produce the agreement during discovery and justify that failure is grounds for disregarding it.  *See Chi. Joe's Tea Room, LLC v. Village of Broadview*, 94 F.4th 588, 603 (7th Cir. 2024) ("[T]he sanction for failure to disclose is automatic and mandatory unless the sanctioned party can show its violation was either justified or harmless.").  Even if the Court were to credit the agreement, the

circumstances of the Expo indicate that it was a public event. Flipsi itself produced a public Twitter post during the Expo showcasing a prototype of the patent and encouraging attendees to visit Flipsi's booth.

The Expo, however, occurred on September 7–10, 2014, within the statutory grace period. TOMY attempts to sidestep this issue by noting that an application containing information about the patent must have been submitted before the grace period. Still, Plott has testified that the application materials were understood to be "confidential." Decl. of Jeffrey Plott ¶ 13. His testimony, even absent a nondisclosure agreement, is evidence that creates a genuine factual dispute regarding whether this disclosure was public.

Third, TOMY argues that Flipsi publicly disclosed prototypes of its patent to 160 end users. Plott, on the other hand, insisted in his affidavit that relevant prototypes were only shown to "friends and family" who he had "confidence . . . would maintain the confidentiality of the prototypes." *Id.* ¶ 10. TOMY again emphasizes that Plott never obtained confidentiality agreements. Again, those agreements are not required for disclosures to be confidential, especially when communications are between friends and family. *See Delano Farms Co. v. Cal. Table Grape Comm'n*, 778 F.3d 1243, 1249 (Fed. Cir. 2015) (citation omitted) (noting that "demonstration of a prototype to friends and colleagues" is not an invalidating public disclosure when there was evidence supporting "a general understanding of confidentiality"). Plott's testimony creates a genuine factual dispute regarding whether the disclosures to 160 end users were public.

In a final effort to smooth over these disputes of material fact, TOMY argues that Plott's affidavit should be disregarded as a sham affidavit. "The sham affidavit rule . . .

12

permits a judge to disregard a 'sham' affidavit—typically an affidavit that contradicts prior deposition testimony." *Craig v. Wrought Washer Mfg., Inc.*, 108 F.4th 537, 543 (7th Cir. 2024). Yet TOMY fails to identify how Plott's affidavit contradicts his deposition testimony. His admission that he never obtained confidentiality agreements from friends and family is not contradicted by his statement that he "had confidence . . . they would maintain the confidentiality of the prototypes"—one can trust the discretion of friends and family without having an express agreement. At most, this is a permissible clarification of prior deposition testimony. *See Simmons v. Chi. Bd. of Educ.*, 289 F.3d 488, 492 (7th Cir. 2002) ("[A] party may attempt to clarify or augment (but not contradict) prior deposition testimony through affidavits."). TOMY may not consider this affidavit credible, but the place to debate witness credibility is before a jury, not during summary judgment. *See Payne*, 337 F.3d at 770 (noting a court cannot "make credibility determinations" or "weigh the evidence" on summary judgment). Jeffrey Plott's affidavit can (and does) create a genuine factual dispute regarding whether the disclosures were public.

### 2. Substantial similarity

Even if a use is public, anticipation only occurs if the use is "identical in all material respects to the claimed invention." *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1313 (Fed. Cir. 2001) (citation omitted). Like infringement, the ordinary observer test is used to determine whether prior public uses are substantially similar to a patent. *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009) (holding that the ordinary observer test is "the sole test for anticipation"). In other words, "that which infringes, if later, would anticipate, if earlier." *CommScope*

13

*Techs. LLC v. Dali Wireless Inc.*, 10 F.4th 1289, 1294 (Fed. Cir. 2021) (quoting *Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889)). This makes the narrow scope of design patents a double-edged sword: if slight differences can create a distinct impression that avoids infringement, similarly small differences can dodge anticipation. *See In re Mann*, 861 F.2d at 1582 ("Design patents have almost no scope.").

A reasonable jury could find that the rendered prototypes disclosed during the student competitions did not anticipate Flipsi's patent. Flipsi's design expert Paul Hatch notes in his rebuttal report that the prototype disclosed during these competitions was curved and had a more noticeable sidewall taper, creating a "very bulbous, rounded impression" unlike the patented design. Expert Rebuttal Report by Paul Hatch in Supp. of Pl. Flipsi, Ltd. ¶ 45. As discussed above, one of the distinct features of Flipsi's patent is the sidewall tapering, which starts off slight but then dramatically encloses at the base. The absence of this tapering in the more bulbous prototype is enough of a difference to allow a reasonable jury to conclude the prototype has a distinct overall impression from Flipsi's patent, preventing anticipation.

Flipsi does not, however, explain how the prototypes disclosed during the ABC Kids Expo differ from its patent. Although Plott stated during his deposition that the design showcased at the Expo was not the final patented design, he does not elaborate on how the designs differ. Nor does Flipsi's design expert Hatch discuss the Expo prototype. Still, the parties dispute whether the Expo prototype's design was disclosed during the application process or just during the Expo, which occurred within the statutory grace period. This, along with the above discussion, creates a genuine dispute of material fact that cannot be resolved on summary judgment.

The Court denies TOMY's motion for summary judgment on the patent's invalidity for anticipation.

## C.    Expert admissibility

As part of their summary judgment briefing, both Flipsi and TOMY have moved to exclude their opponents' experts.  *See Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009) (noting it is "entirely proper" to determine the admissibility of expert testimony while deciding a summary judgment motion).  Rule 702 of the Federal Rules of Evidence "governs the admissibility of expert testimony in federal court." *Artis v. Santos*, 95 F.4th 518, 525 (7th Cir. 2024).  The proponent of the testimony must demonstrate to the Court by a preponderance of the evidence that:  "(a) the expert's scientific, technical, or other specialized knowledge will be helpful to the jury; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts." *Id.*; Fed. R. Evid. 702.

In evaluating expert testimony, a district court is tasked with the "gatekeeping responsibility" to ensure expert testimony "is not only relevant, but reliable."  *Artis*, 95 F.4th at 525 (quoting *Daubert v. Merrel Dow Pharms., Inc.*, 509 U.S. 579, 598 (1993)).  As part of this responsibility, a court must also determine whether an expert is "qualified to testify in the case in question."  *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010); Fed. R. Evid. 702 (requiring experts to be "qualified" by "knowledge, skill, experience, training, or education").  An expert in one subject may not be qualified to speak on another.  The inquiry is "not whether an expert witness is qualified in general," but whether the expert's "qualifications provide a foundation . . . to answer a specific

question" asked. *Gayton*, 593 F.3d at 617 (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)). A court must "look at each of the conclusions [the expert] draws individually" to determine if the expert "has the adequate education, skill, and training to reach them." *Id.*

Finally, once a court has fulfilled its gatekeeping role, it must step aside. The adversarial process is the proper place to debate expert testimony deemed relevant and sufficiently reliable to be admissible. *Artis*, 95 F.4th at 527 (quoting *Daubert*, 509 U.S. at 596) ("After the [gatekeeping] threshold, 'the familiar tools of vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof' will do.").

### 1. Ronald Kemnitzer

Flipsi moves to exclude the testimony of TOMY's design expert, Ronald Kemnitzer, regarding his anticipation analysis. Specifically, Flipsi takes issue with Kemnitzer's statements concerning whether the disclosures discussed above were public or confidential.

Flipsi is correct that Kemnitzer cannot appropriately testify that the disclosures were public. As stated above, it is disputed whether the disclosures were public or confidential, and an expert cannot "testify[] that a disputed fact actually occurred." *See Richman v. Sheahan*, 415 F. Supp. 2d 929, 942 (N.D. Ill. 2006).

Yet the fact that Kemnitzer relies on disputed facts does not disqualify his entire anticipation opinion. "It is well-settled that experts can base their opinions on disputed facts" if "there is evidence to support such facts." *Harris v. City of Chicago*, No. 14 C 4391, 2017 WL 2436316, at *12 (N.D. Ill. June 5, 2017); *see also Andersen v. City of*

16

*Chicago*, No. 16 C 1963, 2020 WL 1848081, at *4 (N.D. Ill. Apr. 13, 2020) (collecting cases); Fed. R. Evid. 702 advisory committee's note to 2000 amendment (noting that an expert may "reach different conclusions based on competing versions of the facts"). TOMY has provided evidence, albeit disputed, that Flipsi's prototype disclosures were public. Kemnitzer may rely on that evidence to conclude, in conjunction with his analysis on the similarities between the prototypes and the patent, that Flipsi's patent is invalid for anticipation.

The Court denies Flipsi's motion to exclude Kemnitzer's anticipation opinion.

### 2.     James Harrington

#### a.     Lost profits damages

First, TOMY moves to exclude the testimony of Flipsi's damages expert, James Harrington, regarding lost profits damages. Section 289 of the Patent Act allows a plaintiff to "recover the total profit an infringer makes from the infringement." *Samsung Elecs. Co. v. Apple Inc.*, 580 U.S. 53, 58 (2016); 35 U.S.C. § 289. Calculating section 289 damages involves a two-step process: (1) "identify the 'article of manufacture' to which the infringed design has been applied," and (2) "calculate the infringer's total profit made on that article of manufacture." *Samsung*, 580 U.S. at 59.

Identifying the article of manufacture can be complicated when the infringing embodiment of the patent is just one part of a multicomponent product. The Supreme Court in *Samsung* held that the article of manufacture is not necessarily the end product "sold to a consumer," but could also be "a component of that product." *Id.* Despite this, the Supreme Court "decline[d] to lay out a test" for "identifying the relevant article of manufacture." *Id.* at 62.

17

District courts have adopted a four-factor test, supported by both parties in *Samsung* during Supreme Court oral argument, to determine the relevant article of manufacture:  1) "[t]he scope of the design claimed in the plaintiff's patent, including the drawing and written description;" 2) "[t]he relative prominence of the design within the product as a whole;" 3) "[w]hether the design is conceptually distinct from the product as a whole;" and 4) "[t]he physical relationship between the patented design and the rest of the product."  *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-1846-LHK, 2017 WL 4776443, at *8, *19 (N.D. Cal. Oct. 22, 2017); *Nordock, Inc. v. Sys., Inc.*, No. 11 C 118, 2017 WL 5633114, at *4, *6 (E.D. Wis. Noc. 21, 2017); *MCP IP, LLC v. .30-06 Outdoors, LLC*, 643 F. Supp. 3d 800, 803 (S.D. Ohio Nov. 21, 2022).

The plaintiff bears the initial burden of persuasion and production to "identify[] the relevant article of manufacture and prov[e] the amount of total profit on the sale of that article."  *Apple*, 2017 WL 4776443, at *19; *Nordock*, 2017 WL 5633114, at *3; *MCP IP*, 643 F. Supp. 3d at 803; *see also Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005) (noting the "ordinary default rule" is that "plaintiffs bear the risk of failing to prove their claims").  If the plaintiff satisfies its burden, "the burden of production shifts to the defendant to come forward with evidence of an alternative article of manufacture and any deductible expenses."  *Apple*, 2017 WL 4776443, at *19; *Nordock*, 2017 WL 5633114, at *4; *MCP IP*, 643 F. Supp. 3d at 803.

TOMY contends that Harrington is not qualified to determine the relevant article of manufacture.  In his report, Harrington analyzed the above factors to conclude that TOMY's entire baby bottle product was the relevant article of manufacture, not just the allegedly infringing bottle insert.  TOMY emphasizes that Harrington lacks expertise in

product design or design patents, making him unqualified to conduct such an analysis. In response, Flipsi argues that Harrington's experience serving as a financial, accounting, and damages expert in several intellectual property disputes, including patent infringement matters, qualifies him to conduct an article of manufacture analysis.

The Court finds that Harrington is not qualified to testify regarding the relevant article of manufacture in this particular case.  Although Flipsi cites Harrington's extensive background as a forensic accountant, it does not explain how his background qualifies him to identify an article of manufacture in the present circumstances.  Nor could it, as the factors relate to patent construction and product design, not economics.

The first factor, for example, concerns the scope of the patent.  Harrington's economic expertise does not make him an expert in patent construction.  His analysis on this factor reflects as much.  Rather than rely on his knowledge, skill, or experience to find that the patent described a "component of a multi-component product," he based his conclusion on a "plain reading of the patent."  Expert Report on Damages by James Harrington ¶ 32.  This "plain reading" in no way draws on Harrington's economic expertise.

Harrington's expertise also does not inform his conclusions concerning the three other article of manufacture factors.  To determine the prominence, distinctness, and physical relationship of the bottle inserts to the entire baby bottle, Harrington analyzed pictures of TOMY's products.  His conclusions that the bottle insert was "not conceptually distinct" from the overall product and a "key component" of the baby bottle were based on an interpretation of TOMY's bottle design.  *Id.* ¶¶ 33–36.  No amount of economic expertise makes Harrington an expert on product design.  *See Gayton*,

593 F.3d at 617.

Flipsi, in a last attempt to save Harrington's testimony, argues that his qualifications are inconsequential because his analysis could be helpful to the jury. Yet Rule 702 requires courts to ensure expert testimony "is not only relevant, but reliable." *Artis*, 95 F.4th at 525 (quoting *Daubert*, 509 U.S. at 598). Whether or not Harrington's conclusions could help the jury, his lack of expertise makes his analysis inadmissible. And in basing certain of his conclusions on a simple, non-expert-informed visual observation, Harrington is contributing nothing beyond what an ordinary juror could do. The Court grants TOMY's motion to exclude Harrington's lost profits damages opinion.

TOMY further argues that summary judgment of no lost profits damages is required once Harrington's testimony is excluded. Flipsi disagrees, arguing that even if Harrington is excluded, "the necessary data for calculating damages . . . is available to present at trial." Pl. Resp. to Def.'s Mot. for Summ. J. & Mot. to Exclude Def.'s Expert's Anticipation Opinion, at 14. As stated above, it is the plaintiff's burden to identify the article of manufacture when requesting patent damages based on an infringer's profits. *Apple*, 2017 WL 4776443, at *19; *Nordock*, 2017 WL 5633114, at *3; *MCP IP*, 643 F. Supp. 3d at 803. Flipsi acknowledges that it carries this burden: "Initially, it is the patentee's burden in 'identifying the article of manufacture and proving the defendant's total profit from that article of manufacture' that it has selected." Pl. Resp. to Def.'s Mot. for Summ. J. & Mot. to Exclude Def.'s Expert's Anticipation Opinion, at 14 (quoting *Nordock*, 2017 WL 5633114, at *3). The patent holder cannot defer this until trial, at least not when the point is challenged on summary judgment. Summary judgement "is not a dress rehearsal or a practice run"—a party must provide "what evidence it has that

20

would convince a trier of fact to accept its version of the events." *Beaumont v. J.P. Morgan Chase Bank, N.A.*, 782 F. Supp. 2d 656, 663 (N.D. Ill. 2011) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)). Flipsi's failure to present admissible evidence identifying the article of manufacture means that no reasonable jury could find, based on the evidence provided, that it can recover lost profits damages in this case.[1]

Flipsi's inability to show lost profits damages, however, does not bar its patent infringement claim. The Patent Act establishes a statutory minimum of "not less than $250" in lost profits damages if patent infringement is found, whether or not damages are shown. 35 U.S.C. § 289. The Court grants TOMY's motion for summary judgment regarding lost profits damages, and limits Flipsi's possible patent damages recovery to $250 if infringement is proved at trial.[2]

### b. Breach of contract damages

Second, TOMY moves to exclude as unreliable Harrington's testimony regarding breach of contract damages. In determining lost revenue attributable to TOMY's alleged

---

[1] Flipsi's design expert Hatch testified during his deposition on May 29, 2024, that he agreed with Harrington's article of manufacture analysis. TOMY argues in its briefing that Hatch's testimony cannot be considered, as it was procured after the April 2 deadline for expert disclosures. Flipsi does not respond to this argument, and it does not mention Hatch's testimony when identifying the relevant article of manufacture in its briefing. Therefore, Flipsi has forfeited any argument that Hatch's testimony is evidence of the relevant article of manufacture. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

[2] TOMY also moves to exclude Harrington's calculation of lost profits damages on the ground that it is overly speculative. The Court need not address this argument, as even if Harrington's calculations could have been admissible, the Court's grant of summary judgment on the lack of lost profits damages renders his entire lost profits analysis irrelevant.

breach of contract, Harrington analyzed Flipsi's week-to-week sales. He concluded that Flipsi's sales were growing before TOMY entered the market, at which point Flipsi's sales "dropped off dramatically." Expert Report on Damages by James Harrington ¶ 48. Based on this conclusion, Harrington determined that Flipsi would have at least maintained sales of approximately $1,900 every two weeks, its highest bi-weekly sales figure, had TOMY not breached its contract with Flipsi and entered the market. Therefore, Harrington calculated lost revenues as equaling what Flipsi would have made if it achieved roughly $1,900 in sales every two weeks from the time TOMY entered the market to December 2023: approximately $265,000. TOMY argues that Harrington's analysis is unreliable, as it simply takes Flipsi's highest sales number and holds it constant all the way to December 2023, rather than considering Flipsi's historic sales, average sales, or growth rate prior to TOMY's market entrance.

The Court finds Harrington's breach of contract testimony sufficiently reliable to be admissible. The reasoning above is not, as TOMY characterizes it, Harrington choosing a number "because he said so." Def. TOMY Int'l, Inc.'s Reply in Supp. of its Mot. for Partial Summ. J., at 15 (quoting *Metavante Corp. v. Emigrant Savs. Bank*, 619 F.3d 748, 761 (7th Cir 2010)). Rather, Harrington determined, based on his expertise and Flipsi's historic sales data, that Flipsi's sales were increasing before TOMY entered the market. His decision to use Flipsi's highest bi-weekly sales figure of $1,900 was a "conservative" estimate in his view, as Flipsi's continual market growth would have led to higher sales peaks absent TOMY's market entry. Expert Report on Damages by James Harrington ¶ 49. TOMY may consider Harrington's analysis self-serving, but that does not make it unreliable—it is not devoid of "methodologies and

principles that support his opinion." *Metavante*, 619 F.3d at 761. TOMY's disagreement with how Harrington conducted his analysis goes to the weight of his testimony, which should be debated before the jury via cross-examination and presentation of contrary evidence and argument. *Artis*, 95 F.4th at 527. The Court denies TOMY's motion to exclude Harrington's breach of contract damages opinion.

TOMY also moves for summary judgment on the damages element of the breach of contract claim. Because Harrington's analysis is admissible evidence concerning damages, the Court denies TOMY's motion for summary judgment on that point.

### Conclusion

For the reasons stated above, the Court grants TOMY's partial motion for summary judgment in part and denies it in part. The Court grants TOMY summary judgment of non-infringement regarding TOMY's four-ounce bottle insert and on Flipsi's request for lost profits damages. The Court otherwise denies TOMY's motion for summary judgment. In addition, the Court excludes Flipsi expert witness Harrington's testimony on lost profits damages but declines to exclude his testimony on breach of contract damages. Lastly, the Court denies Flipsi's motion to exclude Ronald Kemnitzer's anticipation opinion testimony. The Court directs the parties to meet and confer regarding an appropriate schedule for further proceedings and file a joint status report on February 18, 2025. A telephonic status hearing is set for February 25, 2025 at 9:10 a.m., using call-in number 650-479-3207, access code 2305-915-8729.

Date: February 4, 2025

_____
MATTHEW F. KENNELLY
United States District Judge